Hazel Jean GRIGSBY, Widow of John D. Grigsby, Individually and as Natural Tutrix of her Minor Children, Javan K. Grigsby and Jennifer Ann Grigsby, Libellant,

v.

COASTAL MARINE SERVICE OF TEXAS, INC., Maryland Casualty Company, Gulf Salt Carriers, Inc., F. E. Aiple d/b/a Aiple Towing Company, and Fidelity & Casualty Company of New York, Original Respondents, Cross-Libellants and Cross-Respondents,

WELDERS SUPPLY COMPANY OF LAKE CHARLES, LOUISIANA, Third-Party Respondent and Cross-Libellant,

Olin Mathieson Chemical Corporation, Intervenor and Cross-Respondent.

No. 9499.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Oct. 8, 1969.

Baggett & Hawsey, Lake Charles, La., for libellant.

Holt & Woodley, Lake Charles, La., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., Hall, Raggio, Farrar & Barnett, Stockwell, St. Dizier, Sievert & Viccellio, Lake Charles, La., for original respondents.

Kaufman, Anderson, Leithead, Scott & Boudreau, Jones, Kimball, Harper, Tete & Wetherill, Lake Charles, La., for third party respondents.

EDWIN F. HUNTER, Jr., District Judge.

This case has had its share of complications. After a full trial and a record exceeding 1800 pages in length, for reasons set forth in a rather lengthy opinion, 235 F.Supp. 97, we awarded recovery to the survivors against all defendants and denied indemnity. The Court of Appeals, in an exhaustive opinion (67 pages) 412 F.2d 1011, affirmed as to plaintiffs' right to recover against all defendants in solido, but remanded the case on the issues of indemnity and quantum.

On the basis of the record and the Court of Appeals' opinion, we enter our findings and conclusions on these issues.

## INDEMNITY

The Court will do its best to comply with the mandate, but the lawyers disagree as to what the Fifth Circuit has said. All the defendants and the Court tried the case below on the presumption that Louisiana law governed pursuant to *Tungus* [Skovgaard v. The M/V Tungus, (3 Cir. 1957) 252 F.2d 14, aff'd 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524]. The Court of Appeals, in no uncertain terms, says that both *Ryan* [Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133] and *Delta Marine* [Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co. (5 Cir. 1969) 410 F.2d 178] principles apply as to the indemnity:

> "If on such remand the Ryan right fails as to either one or both, then Aiple has the right to undertake establishing indemnity on Delta Marine, supra, tort principles."

Thus, the federal law is applicable—not the state law as we had thought, and as counsel for defendants (other than Aiple) still think.

## FINDINGS OF FACT

1. Coastal entered into a contract with Aiple, the bareboat charterer of the barge MORTON SALT II, to strip water from the starboard wing tanks of the said vessel.

2. Coastal, in accepting the said contract as an independent contractor, took full responsibility for the said operation on November 18, 1962, there being no

representative of Aiple present or located in the Lake Charles-Westlake, Louisiana area.

3. Welders entered into a contract with Coastal to assist in the said operation and assumed full responsibility for its portion thereof.

4. Aiple did nothing or failed to do anything which made the barge MORTON SALT II unseaworthy. (See pg. 1041 of 412 F.2d).

5. Previous findings of fact concerning the acts and omissions of acts of Coastal and Welders show that they failed to perform their work on the barge MORTON SALT II in a workmanlike manner and in fact the said work was performed in a negligent manner. We quote from Page 1041 of the Court of Appeals' opinion:

"The unseaworthiness, found and affirmed here, was due to the manner in which Coastal, the contractor, undertook to do its work knowing that the wing tanks had been long closed and sealed, thus presenting unusual hazards to those making a tank entry. It was Coastal's conduct which had brought the unseaworthiness into play if not into being. Differing only in degree, as to Welders, the District Court found that Welders violated the regulations and that Sonnier's actions contributed toward making the barge unseaworthy."

This quote from the Fifth Circuit is adopted as a finding of fact by me.

6. The attorneys' fees and expenses incurred by Aiple in this case are as follows:

| | |
|---|---|
| Attorneys' fees | $38,562.50 |
| Expenses | 4,389.51 |
| | $42,952.01 |

## CONCLUSIONS OF LAW

1. Aiple is entitled to indemnity under the *Ryan* doctrine from Coastal and Welders for breach of their warranty of workmanlike performance. See Parts XI and XII of the decision of the United States Courts of Appeals for the Fifth Circuit herein dated May 1, 1969, and the cases there cited.

2. If Coastal and/or Welders are not liable to Aiple for indemnification under the *Ryan* doctrine, both are liable under the tort principles of "major-minor", "active-passive" set out in Tri-State Oil Tool Industries, Inc., et al v. Delta Marine Drilling Company, et al, 410 F.2d 178 (5th Cir., 1969) and the jurisprudence cited therein.

3. The indemnity to which Aiple is entitled includes not only the amount for which they become liable to pay as a result of the judgment rendered herein but also includes attorneys' fees and expenses incurred in defending this action. Lusich v. Bloomfield Steamship Company, 355 F.2d 770 (5th Cir., 1966); SS Lena Luckenbach v. Walsh Stevedoring Company, 395 F.2d 217 (5th Cir., 1968); and United New York Sandy Hook Pilots Association v. Rodermond Industries, (3rd Cir., 1968) 394 F.2d 65.

4. The Court accepts at the outset per hour amount charged by Aiple's attorneys and the out-of-pocket expenses incurred.

Surely, a litigant is entitled to representation by two law firms, but we seriously doubt that the costs of such representation should be passed on by way of indemnity. The reason for this is the obvious duplication of effort. There was testimony both from Mr. Dunbar and Mr. Hall that they checked each others pleadings, both firms did independent research on all aspects of the case, which certainly would indicate duplication, both attended the trial and certainly this is duplication during seven days, except for one day when Mr. Hall was out ill; both attorneys, senior partners of their respective firms, interviewed witnesses during the course of the trial; both attended the argument of this case in the Fifth Circuit Court of Appeals, which would involve duplication of travel expenses in addition to the value of their services. Certainly all of the foregoing should be deducted from

any attorneys' fees awarded by the Court. I take judicial notice that on my own docket it is the exception rather than the rule for attorneys from away from here to associate, as active participants in all phases of the litigation, local counsel.

■ There is a further item we must take into consideration. A party seeking attorneys' fees and expenses in connection with indemnification can only obtain the value of such services and the money expended in connection with the defense of the demand made by the plaintiff and no recovery can be had in connection with the assertion of the indemnification demand. See Singer v. Dorr, D.C., 272 F.Supp. 931; McDonough Construction Company v. H. B. Fowler & Company, Inc., D.C., 281 F. Supp. 90; Williams v. California Company, D.C., 289 F.Supp. 376.

Thus the attorneys' fees and expenses awarded should take the foregoing into consideration and the amounts claimed in this case by the testimony should be reduced by any and all amounts attributable to Aiple's indemnification demand which would include preparation of initial and subsequent pleadings, a part of the time spent in the trial and in the preparation and research for the brief filed in the Court of Appeals and for other briefs filed in connection with the demand for indemnification; a part of the time allocated to the argument of the case in the Court of Appeals and in preparation of any trial memorandum in regard to the hearing on remand and appearance at the hearing on the remand if any charges were included in the amounts of attorneys' fees and expenses claimed.

■ As the Court said in Williams v. California Company, supra, the indemnitee has the burden of proving the reasonableness of the fees and the expenses incurred. Consequently it is encumbered upon the attorneys for Aiple to make the record clear on this point and not the burden of others.

■ Additionally, the Court, in Singer v. Dorr, supra, said that the costs of defending against a counter claim may not be recovered just as time for enforcing a crossclaim cannot be recovered. This again would substantially reduce the amount that Aiple's attorneys are to receive. We fix the amount of attorneys' fees recoverable in this case at $20,000, and the expenses at $4,389.51.

## QUANTUM

■ After remand, defendants sought to introduce evidence of remarriage and collateral income. We rejected this evidence and will decide the case on the previous record. Damages in cases such as this cannot be computed by mathematical formulae nor derived from fixed principles susceptible of being programmed into a computer. In a case decided by the Fifth Circuit on January 23, 1969 involving the death of a longshoreman, the Court sustained the judge's award of pecuniary damage in the amount of $32,984 to the wife and $32,944 total for seven children. Neal, etc. v. Saga Shipping Company, 407 F.2d 481 (5th Cir. 1969). There, the decedent's earnings were $7,550 per year. Here decedent's income was $5,-750 per year. The simple truth is that there are too many variables; none of us can divine the future. In the instant case the decision of the appellate case takes the current income, devotes 80% of it to the dependents, discounts it at four (4%) percent, and applies life expectancy rather than work expectancy, and concludes that this would total $95,312.18. If free to do so I would use work expectancy and a five (5%) percent discount rate on future years from this date, together with a 75% allotment to dependents. But the law of this case is that a finding of not less than $90,000 is compelled as a direct pecuniary loss. Accordingly, we award to the widow $45,000 and to each child $22,500 as a pecuniary loss. In addition, we award to the widow and the two children an additional $15,000 each. This is for the

loss to the two children of parental guidance and care and the loss to all three (mother and children) of love and affection. Interest will run from date of judicial demand until paid.

Counsel for plaintiff and Aiple will prepare an appropriate judgment and submit forthwith.